Good morning, your honors. May it please the court, my name is Susan Dion and I'm here on behalf of the appellants. There are two issues before the court today in this matter. First, whether the district court erred in granting plaintiffs a motion for summary judgment on his pension benefits claim. And second, whether the court erred in awarding the plaintiff's statutory penalties under ERISA. With respect to the benefits claim, the appellants respectfully assert that the district court erred in deciding in plaintiff's favor because the plan in reaching its determination on plaintiff's benefit claim reached a reasonable interpretation of the plan and therefore that decision should have been given appropriate deference and appellate. The issue before the court is not whether the plaintiff is entitled to a benefit in this case. Mr. Carroll can start. That is correct, your honor. That is all that is required under a very clear Fourth Circuit precedent. The plan in this case grants the plan administrator appropriate deference and discretion. It clearly states that the plan has the authority to decide any ambiguities in the plan, any omissions in the plan. Is there any ambiguity in this situation? There is, your honor. What is ambiguous about regular early retirement under 4.2b has completed at least 30 years, 34 years of vesting and eligibility service, and you go down to what is vesting and eligibility service, it means continuous service, and continuous service is from employee's date of hire to the date of termination, and then termination of employment. All those are, that seems pretty clear to me. I think that is possibly one reasonable reading of the plan. The problem is the ambiguity... Could you move your microphone down just a little bit? We want to make sure we hear what you have to say. Certainly. Okay, that is great. If it was a little taller, I would be alright. The ambiguity in the plan, your honor, Judge Floyd, is in Section 1.56b.5.4, and in that section, that is the only place in the plan document that discusses what happens with someone's service credit, how you calculate that when someone is on layoff. The only place in the plan that connects the term layoff with a calculation of service credit, and what that provision says, and why that creates an ambiguity is it says that if you go out on layoff, if you are laid off and you return, then you get service credit for that period of layoff. If someone always got credit for service when they were laid off, that language would be completely unnecessary. So I believe that is where the ambiguity is created, and when the plan looked at the plaintiff's claims, for the most part, the facts are undisputed in this case. What we're really concerned with is what happened during that time period that the plaintiff, Mr. Carroll, was laid off, and subsequently never returned to employment. I would like to return to Judge Floyd's question. The B-4 deals with when termination of employment will occur, and it says on the second anniversary of the date the employee was absent due to layoff. So that's provision, both in plain language and its purpose. In plain language, the second anniversary would be December 13, 2010, and that would be 31 plus years from the day he joined the company. Number one, I don't understand why that language doesn't wrap up the case. But the second point is, when I read that language, I thought it was put in there to apply to just persons like Mr. Carroll, who had served 29.84 years of service. I mean, he'd almost gotten to the 30. I'm surprised it wasn't for somebody that close to just be given the regular early retirement he deserved after all those years. But it seemed to me that this language about the second anniversary was put to cover people like Mr. Carroll who were laid off near the very end of their tenure with Continental Automotive. That is, people who had put in 28 years of service or more, and the second anniversary would have them covered. So whether you look at it in terms of the plain language or whether you look at it in terms of the purpose and intent of the provision, doesn't this 156B-4 just cover it as the case really any more complicated than that? I believe it is, Your Honor, for a couple reasons. One, I don't think you can stop there. Lawyers never have a simple case, huh? That's right. For a couple reasons. One, there's no evidence of that being the purpose for that language in this record. Can't you infer the purpose? Because otherwise you'd say, well, the termination of employment is effective the date of the layoff. But that's not what it says. It says termination of employment is effective on the second anniversary. I think that it says there's a termination. I think that Judge Howell read into it effective on that date. The company has always treated the effective date as the last day worked. And the company, while Mr. Carroll's circumstances... That's a custom or practice question, but the language of the plan here seems awfully favorable for the plaintiff's position. I think that it can be one reading of the plan language. The problem comes in with why then does the plan contain 1.56B-5-4, where it says specifically if you're out on layoff, then when you come back you get service credit for when you come back. So it specifically addresses, this is the only place in the plan where it specifically addresses what happens with service credit when you're on layoff. When did he return? Did he return within two years? He did not return within two years. So why is that even relevant? Why is B-5 even relevant? B-4 says when termination does occur and then B-5 says when it does not occur. And if B-5 doesn't apply to Mr. Carroll because he didn't return within two years, then that leaves us with B-4. The plan would not... If you look at 1.56, the plan would not even have to address if you always got credit when you were on layoff for service. If you always got service credit when you were on layoff, there would be no need to have section 1.56B-5-4 in the plan. That is the only place that it's there. It addresses people who return within two years. And B-4 addresses the situation of what the termination date is for people who don't return in two years. So they make perfect sense together. I think that's one reading of the plan. I think that the plan also put forth a reasonable reading of the record of its past practice. It has never given a participant service when they had a layoff and they never returned to active service. It has never done that. It also looked at... What I'm asking you is how does a pattern or practice trump the plain meaning of a plan provision? That's my problem. Well, and I think that we have a dispute over what the plain meaning of the plan is. I think that that's one reading of the plan. The abuse of discretion standard does not require the plan to make a more reasonable interpretation than what the plaintiff may make and what the court may make. 1.56B-5-4 creates an ambiguity in the plan that the plan administrator had the right to construe. In doing that, it acted reasonably by looking at its past practice and by looking at other documents that were provided to plan participants, the summary plan description, and it found that consistently the only time that an individual got credit, service credit, for the time that they were on layoff is if they returned to employment. If they never returned to employment, those participants did not get credit for that time period on layoff. Mr. Carroll may be sympathetic because he was close. I guess that's the question. I'm following up on Judge Wilkerson. How does it apply to him? He didn't return. 1.56B-5 applies because you have to look at the plan as a whole. And if you look at things in a vacuum, if you look at different terms in a vacuum, then you may be able to get to that result. But if you construe the plan as a whole and look at the structure of the plan, where it says if you come back, you get the credit, and it's silent as to what happens, there's nothing, nothing in the section. Who is the administrator of the plan? The pension committee for the plan. What happens to the money if it doesn't go into retirement? This plan, Your Honor, and this goes to one of the booth factors that this court looks at when it's analyzing ERISA claims. This plan is funded by a trust. Continental does not have access to the trust funds to pay out these claims. It's not an insured benefit. And this court has repeatedly found that where a trust is involved, that any kind of conflict of interest argument falls away, and it really recedes, inciting Glenn and Lance v. International Paper, to a vanishing point. The case itself, at least, when we look at it and we've got this clear path, we say B-5 doesn't apply to him. This clear path does indicate it. It's pretty straightforward. This counts. But what really makes it a difficult case, and maybe it doesn't matter if the company does this, but two months shy of 30 years, you lay him off. He has something to recall. You've got explicit language in here that says he can come back. And if he doesn't come back in two years, then he's terminated. And that's the language that's applicable here, terminated. And the company and administrators are fighting tooth and nail because someone worked for them for 29 years and 10 months, two months short of getting this. It seems like that is just something fundamentally wrong with a company that would even seek to deny this. But this language is here. We can't do it on policy. We won't do it on policy. If you can do it, you can do it. That's just it. But here's this interpretation. You said this is a reasonable interpretation. What's totally unreasonable is you did it in the first instance, but we'll get away from that. So now we're going to allow the same group to do a reasonable interpretation of a contract that lays it out right here. I'm ‑‑ this can't feel good addressing this case. I just don't ‑‑ maybe I'm missing something on that. That doesn't even sound right. Your Honor, I see the amount of time. May I respond to that question? Please. Because there must be a good reason why this is going on other than we can't do it. Your Honor, well, Mr. Carroll certainly is sympathetic because he was close to meeting that 30‑year deadline. Right at the door. 29 years and 10 months. That's a long time, probably older than you are. And it wasn't because of anything he did. He wasn't dishonest. He wasn't laying down on the job. He wasn't, as far as I'm concerned, he was an acceptable employee. You don't make any argument to the contrary. And then you come up with a reasonableness argument. And then you say, well, I get you. It's not persuasive to me. But the ‑‑ what's unreasonable is a company would treat somebody this way, honestly. I mean, that doesn't absolve us of the need to resolve this case. It doesn't absolve us of the need to resolve this case as a matter of law and in accordance with the plan language. But, you know, this is not a great suit in terms of the public relations department of Continental Law and Voting. Your Honor, I would cite to your honors, I would cite to Justice Ginsburg in the Black and Decker case where it says that ERISA does not obligate employers to create benefit plans. And it also does not require specific terms in a benefit plan. Continental has a 30‑year service requirement in order to get enhanced early retirement. Mr. Carroll can get early retirement. I'm not sure she had a case before her like this. These kind of facts on that. But aside from that, getting to Judge Wilkerson's point on here, there must be some benefit to Continental or something to want to press this. I mean, the funds must ‑‑ either they must have to replace these funds or something bad must happen if they have to pay this out. Because otherwise Continental would say, you've got money to trust. We do our employees after 29 years and 10 months. We move it. We don't come in and say, well, we're not going to count those two months we laid you off on the 29 years. Your Honor, it is very common in pension plans to establish bright line rules. Because if we made an exception for Mr. Carroll, then opposing counsel would be up here with the next claimant who had 29 years in one month of service or 28 years in seven months of service. In the language, is this somewhere down the line? Because it goes straight up and says what period of termination is and then you define what termination of employment is. And it's clear that it's the second anniversary, do you think? That's beyond 30 years. That just seems to be a clear wading void without saying, well, if he had returned, didn't we do that? He didn't return. This provision kicks in. And I think if you look at the structure of the plan and that whole provision, that is one reasonable reading, and the plan's reading of it is also reasonable. The plan looked at the term layoff and when it connected to calculation of service. I see that I'm over my limit. Thank you. Mr. Adams? Good morning, Your Honors. You might concentrate on any argument that we've overlooked. You've heard what we've said. Is there anything that we've overlooked? No, Your Honor, I think that's the analysis that Judge Floyd started out with, the 4.2 to 1.62 to 1.15 to 1.19 to 1.56B4. I will add to that, like every risk case, and I guess every case before you, that the standard of review is important. This case, it is abuse of discretion. We don't dispute it. Well, you're saying this is contrary to the term, to the plan's plain language. You're saying that the ruling was contrary to the plain language of the plan, that Judge Floyd began this argument with saying there's no ambiguity here. That's absolutely correct. And that's kind of the point is that I don't think that the abuse of discretion standard of review is ultimately of much import here because this doesn't involve interpretation of a disputed plan provision. It simply involves application of a clear plan provision. So as the district court pointed out, where the plan's terms are clear and unambiguous, the plan administrator's discretionary authority is not implicated. So I think that the standard of review that it's before the court under is of less significance than it often is. Once you get past that and you look at the plan language, as each of you have pointed out, it appears very clear that it governs this specific factual situation. I disagree that B-5-4 has any relevance to the claim. As you pointed out, it covers situations where they do not return in less than two years. It seems to me that they're trying to use a summary plan description to create these ambiguities. But is the summary plan description a part of the plan or not? No, Your Honor. After the Amara case by the Supreme Court and subsequent cases by this court, Cozy, Helton, Wilkinson just decided earlier this month, the summary plan description is not a plan document. It is unable to be applied where it conflicts with the terms of the plan. And that, frankly, is where, in the denial letter, where I think maybe the plan administrator or the committee started to go off because they started applying terms that are only defined in the summary plan description. They stated in arguing that it was a period of severance, that it was based on the committee's review of the plan and the SPD that your period was not vesting service. Vesting service isn't defined or even included in the plan. It's only included in the SPD. In another place where they found that he was not a covered employee, again, it went to vesting service and accredited service, which neither are our plan terms. So I don't think you have to get to the SPD. I don't think even it would be appropriate to after the recent Supreme Court decision and this court's follow-up decisions. Unless there's other questions on this issue, I'd like to address the statutory penalty claim. The court also awarded statutory penalties in the amount of $1,300 to Mr. Carroll. It's been disputed by the appellant. Our position is that there was broad discretion for the court to award them, that it's under a clear error standard for this court, that the court appropriately took in the factors that are before it of whether there was prejudice and whether there was bad faith when it reduced the statutory penalty. Well, the statutory penalty could have been a lot higher than it was. Your Honor, I think it could have been as much as about 10. It was $110 a day for each document that wasn't proposed. But it does sound fishy that these documents aren't produced until after the appeal date has expired. The good faith in producing these doesn't jump out at me because disclosure obligations had to be clear. Yes, Your Honor. In fact, they're listed in the SPD. You don't wait until after somebody's appeal date has expired before you produce the documents. The documents could be helpful in all kinds of ways in deciding whether to take an appeal. And if so, how to frame the issue and the rest. There are some aspects of this whole case that don't look altogether admirable. Yes, Your Honor, I would agree. The precedent that applies is pretty unforgiving if a claimant misses a deadline. So we didn't have any choice other than to go forward without the documents and file them the appeal. Do you have anything further? I do not, Your Honor. Before you leave, let me ask my colleague. We have nothing further. Ms. Dionne, you have some rebuttal time. Your Honors, I'd like to step back for a second. We started our discussion today going through some of the language and going right to 1.56. When the plan evaluated Mr. Carroll's claim, it first looked at vesting and eligibility service because the regular early retirement provision says, did he have 30 years of vesting and eligibility service? There is nothing in that provision that talks about what happens when you're laid off. So the plan then went and looked at the vesting service provision in the SPD and found that it only discussed layoff and when you were rehired. The plan also looked at the language in 1.56. To Judge Flynn's question, there is nothing improper about a plan looking to the summary plan description where there isn't a conflict in the language, and we do not believe there is a conflict here. We believe that the lack of any language in the vesting and eligibility service section does create an ambiguity or an omission in how the plan calculated service credit. So the plan then went and looked at the structure of the plan, the other provisions in the plan that may calculate layoff and service credit. What the plan was looking to try to do was to figure out how do we calculate this time period that he's been laid off. The plan did that. The plan walked through not only the plan terms, but the summary plan description, which again, it's perfectly permissible to do and we don't even get to Amara because the plan terms are not in conflict with what exists. The summary plan description is not in conflict with what is actually in the plan document. Just to address Your Honor's question about the penalties claim and one point that you went to and asked opposing counsel about, in this case there was a short delay in providing the plan documents. The summary plan description had already been provided to the plaintiff at the first initial level of denial. On appeal, Mr. Carroll had representation. His counsel had the plan document in his possession and had already litigated the matter, and his counsel reserved the right to make additional arguments after receipt of those documents, and his counsel never did that. So we contend that there wasn't evidence of bad faith or substantial delay. When penalties are usually awarded in these cases, it's when either the plan documents were not provided at all, the plaintiff was somehow prejudiced, or there was substantial delay of over a year or something along those lines. So we would respectfully assert that it was unnecessary to award penalties in this case and clear error by the district court to do so. In closing, Your Honors, thank you for your time and consideration here today. As I stated earlier, the plan is not required to provide a more reasonable reading of the plan document than what the plaintiff may assert and even what Your Honors may find in the plan documents. All that is required under cases like DeNoble that Your Honor decided, Mr. Judge Wilkinson, all those requires that the plan put forward a reasonable interpretation of its provisions. Ms. Dionne, I think we understand that argument, and it's a good one to make, but we do understand the standard of review and the latitude that's given to plan administrators in the case of an ambiguous plan. In this case, if the district court's decision is not reversed, essentially what the court is inviting participants to do is to ask federal courts to be substitute plan administrators, which is exactly the opposite of what Congress intended with ERISA. They wanted these decisions before the plan. They didn't want to burden the federal courts with them, and whereas here what we're talking about is purely plan interpretation, the plan's decision should be upheld. Therefore, we would respectfully ask that the district court's decision be reversed and that judgment be entered on behalf of the appellants. Thank you. We thank you. We will adjourn court and come down to the council. This honorable court stands adjourned until tomorrow morning. Dossier, United States of this honorable court.
judges: J. Harvie Wilkinson III, James A. Wynn, Jr., Henry F. Floyd